FASTCASE, Inc. v. Lawriter, LLC FASTCASE, Inc. v. Lawriter, LLC Mr. Trauper. Thank you, Your Honor. May it please the Court, my name is Joshua Trauper. I'm here on a case that involves the intersection of copyright and public policy. The appeal specifically deals with questions of Federal subject matter jurisdiction, but it is important to keep the context in mind because the factual setting and the legal arguments that brought us to this point would make no sense if this were not ultimately a copyright case. The fundamental problem of subject matter jurisdiction, because this is an appeal from a dismissal for lack of subject matter jurisdiction, is a de novo review. FASTCASE had presented four distinct issues as to why, or four distinct grounds for why there was subject matter jurisdiction. Federal question in the form of copyright infringement allegation and Federal question in the form of Federal preemption by the copyright law of related State court claims. Also, diversity, the diversity of citizenship is undisputed. It's established. The question of the amount in controversy, however, also splits into two parts because FASTCASE alleged two completely separate reasons why the case involves more than $75,000. So of those four issues, which I don't think I'm going to have time to discuss this morning, I will point out that the copyright preemption issue was never even discussed by the District Court. You have another question on whether or not joining the State of Florida was required under Rule 19B. I can't imagine that the State's not implicated in this case. Well, Your Honor, I think the fundamental question of indispensability of the State is it's a two-part inquiry. First is can the court rule on the issues presented by the parties without implicating the interests of the State? And the answer to that is clearly it can. In fact, the record below the issue of the State of Florida is that it can. I can't imagine deciding this case without implicating the State's interests. Your Honor, in fact, the State is not interested at all as a practical matter or as a legal matter because the You have two State entities that have different obligations with regards to your client and its competitor. So there's at least a possibility. There is a possibility that either the Secretary of State's office or the State Bar might express some interest in this case. Neither has. But you don't know one way or the other whether they are. Nobody asked the Secretary of State whether the Secretary thought that the Secretary was giving an exclusive right to law writers. So the record doesn't show one way or the other whether the State thinks it has given law writers an exclusive right. Isn't that correct? Well, the record shows that the State gave law writer the exclusive right to publish. But you're, in effect, contending that the State also gave your client the right to obtain that information that law writer puts together. No, Your Honor. You want to copy it. As if you were West Publishing Company or something. You just want to lift it, don't you? The right that FASTCASE seeks to assert here is the right to learn what the law of the State of Georgia is from the official website of the Secretary of State of Georgia. You want to copy what's on the website, do you not? That is correct, Your Honor. Okay. And you say that has to be derived, in a way, from your agreement with the State. No, Your Honor. Oh, you're taking a position you're like a lawyer or somebody? It doesn't matter. Some citizen who wants to get a regulation, download a regulation from the website? As a matter of legal principle, Your Honor, it doesn't matter. Because the law is open to the public, and as it must be in a free society, as all the courts that have considered the issue. So your rights don't derive from the State, is what you're talking about? Our rights. At all? Our rights are precedence to those of the State. They don't derive from the State at all. They do not derive from the State. At all. They're not stemmed from your contractual relationship with the State. Our right to publish the law does not stem from our contractual relationship with the State. That is correct. But, I mean, I guess I'd frame it this way. If the Secretary of State thought and intended to give law writers the exclusive right to publish this and to prevent a compiler from downloading as you proposed to do, if, in fact, the State wanted to prohibit that, then the State would have an interest in this proceeding. Because certainly if you win, that intent is going to be overridden. If, in fact, that was the State's intent. Your Honor, the record does not explicitly say so except to the extent that the State's contract with law writer says that the information is supposed to be put on the Secretary of State's website without any registration requirement, without limitation. But it also gives them a $5,000 break on the price if somebody buys the set. If somebody buys the hardbound physical set, yes. In fact, that indirectly supports Fastcase's position because what happens to the online version does not influence. I read that provision, and I didn't find the words hard copy. I mean, those words aren't in there, are they? The word hard copy is not in there, Your Honor, but the actual text of what is there is — How do I know that the Secretary of State did not intend to make law writers the only online place to get the set and then to recover for the State $5,000 if anybody did what Fastcase is doing? The second part of the question is that there is no way as a practical matter to know whether you're buying the complete set unless you're buying the physical set. The important part of the question, I think, Your Honor, is that we give the State the benefit of the doubt that it is not trying to do something that it has no power under law to do. The State cannot — Because the State of Georgia has never tried to do something that Federal law would forbid? And when the State has tried to do that and anyone has objected, the courts — the Federal courts step in to protect the rights of the others. But only after giving the State a chance to be heard on the issue. Isn't that right? That's Judge Jordan's question. Why doesn't the State get a chance to address the question? If the State wishes a chance to address the question, the State has every right to intervene. They might waive sovereign immunity and they may not waive — they may impose sovereign immunity, in which case you're in trouble. Well, I don't — But we don't know. I don't believe so, Your Honor, because I don't think that the State can assert sovereign immunity without appearing and saying that they have an interest. I mean, successfully. You don't think they could do it successfully? I'm sorry. Well, here's how it would work, and tell me what's wrong with this disposition. Why would it be wrong for us to say there's an indispensable party, send them back, you can join the Secretary of State under ex parte Young and find out whether the Secretary asserts this — maybe first do some discovery, find out if the Secretary presents this position. If the Secretary says, oh, no, we didn't intend to give any exclusive right, we're not going to try to buck into the copyright system, we've got no interest, then you're fine. But if the Secretary says, yes, I want my $5,000 back and fast case can't do this, then you name the Secretary under ex parte Young and you litigate the question and you find out what the Secretary has to say. Your Honor, I think — What's wrong with that? I think that is possible. I think it's completely unnecessary. The Secretary of State is unquestionably aware of this litigation and has had opportunity to intercede. The district court did not even rule on the issue of indispensable party and certainly could have. So I think that if the case is remanded for further proceedings in the district court, it could conceivably go in that direction. But I believe you first have to recognize that the federal district court is the place where this case needs to be and where that issue needs to be decided. All right, let's turn to that for a second. What do we have in the record concerning your contract with the Georgia Bar? The allegation and the complaint, which is undisputed, and this was a motion to dismiss, that the contract with the Georgia Bar is based on a per-member fee, which is why we don't say — We don't know what that contract says other than what you alleged in the complaint. Your Honor, it is undisputed. There must be a writing somewhere. Of course there is, Your Honor. Well, we don't know what it is, do we? It is not in the record, Your Honor. The Supreme Court of the United States has said that the allegations of the complaint, if in good faith, must control. That allegation is not even disputed. I agree with that point. I accept all of your allegations as true because of the posture the case is in. But your allegation is not just that you have a contract that requires you to do X, but that if you don't do X, you might be subject to termination. And without knowing what that contract says, it's really hard. I'm trying to figure out what the district judge was thinking in saying that your claim, that the amount in controversy was over $75,000, was speculative because that seemed to be, to me, an odd ruling given your allegation. But as I started to think about it more, I thought, well, you don't know what that contract says. Because, let me give you an example. And again, I have no idea what the contract provides. But if the contract says, here are the things that Fast Case has to do for us, 1, 2, 3, 4, and 5. If Fast Case doesn't do 2, then it's a $20,000 penalty. If Fast Case doesn't do 3, it's a $40,000 penalty. If Fast Case doesn't do 5, termination for the entire contract. Having the contract would have certainly helped. It may not have been necessary, but it certainly would have helped to figure out whether or not your allegation that you were likely to suffer $75,000 or more a year in losses was speculative or not. What's the response? Your Honor, the allegation is that if Fast Case cannot provide the entire body of Georgia law, including the regulations at issue here, the contract is subject to termination. And yes, the contract itself is not in evidence, but that is the allegation that is undisputed. It is also alleged that the contract is worth more than $75,000 per year, and we have explained why it is impossible to state a specific, precise amount, because it's according to the number of members of the bar, which will vary from time to time. But both of those allegations are there, and those allegations are not disputed. We understand that, because you're in a motion. It was a motion to dismiss, so it's admitted. But you say some rebuttal time. Yes, I did. Thank you, Your Honor. Mr. Rozelski. Yes, Your Honor. May it please the Court. Kurt Rozelski on behalf of the Appley Law Writer. I first want to start off by talking about Mr. Topper's initial comment saying that this is the intersection of copyright and public policy. That's not at all what this case is about. This case is about whether or not Fastcase can come in and get something for free. The intersection of copyright and public policy is preserved. My client entered into a contract with the Secretary of State of Georgia, and it provides, and any one of us, anyone in this courtroom can go on the website and can look at the law and the regulations in the State of Georgia. That's what is required. Now, what Georgia did, and the reason that I think Your Honors picked up on and what I think really is the part that maybe the district court missed, is the State of Georgia, particularly the Secretary of State, is implicated here because the State of Georgia chose a method by which they had to comply with the Administrative Procedures Act. They're required to publish the regulations. And in the old days, the regulations would have been published in hard copies, and you or I would have gone into the Secretary of State's office. We would have read what we wanted. We would have gone to the copy machine, and we would have paid to make physical copies. And Georgia decided, well, we'd rather, in the age of the Internet, make this available to the general public. And so they chose to contract with my client to publish it in an online version. Now, what the plaintiff wants to suggest is That's all about the merits. That's all about the merits, right? You won without getting to the merits. Yes, Your Honor. And I apologize. What I'm trying to get at, though, is that the State's choice of how to contract is why they're an indispensable party. The State chose they were going to pay $20,000. We don't know whether the State thinks that your website should be available to a compiler or not, do we? I mean, you say that that's what the State did, but we don't know what the State's position is at all. Absolutely. And that's the reason that the State's an indispensable party. Right. And that's — I mean, we've — our motion was pursuant to 12b-1 and Rule 19. The judge decided it on 12b-1, although it may be that he really converted it or looked at it in a 12b-6 fashion, because when he looked at the issues, at least with regard to Federal question, and he looked at whether or not the Eleventh Circuit precedent in Stuart Weitzman should apply post-the U.S. Supreme Court case in the Muchkin matter, what he essentially did is he looked at it and said, well, wait a second. Muchkin doesn't apply for this reason. The — and I may be calling it wrong. I say Muchkin, and it's Muchnick. Excuse me. But the Muchnick case was a case where you had a consolidated class. Part of the class had registered copyrights, and part of the class didn't. And the Second Circuit, sua sponte, said there isn't jurisdiction. There's no subject matter jurisdiction. And the Supreme Court said, no, it's not jurisdictional. Well, what I think that the district court did here is when they looked at it, they said, well, wait a second. That wasn't a declaratory judgment action. In a declaratory judgment action, when you're looking at the coercive suit, if Lawrider had filed the suit, would they be able to file the suit? And what the Court decided was that because they didn't register it, they couldn't have filed the suit. In fact, the appellants essentially admit that. I think in their reply brief, what they say is, it is — the Court would have jurisdiction, but it is dismissible. Okay? And so what they're saying is the Court has jurisdiction to dismiss the case. Now, I don't think we have to get there because of Rule 19. I think Rule 19 very clearly implicates, and as Your Honor, as Judge Henkel points out, the State of Georgia has to say what they wanted. They have to have the right to come in and say what they wanted. They may waive sovereign immunity. We don't know. Well, there have been other cases litigated in this circuit, one of which I wrote the opinion on, where State agencies in Florida had done contrary things, conflicting things with State intellectual property. State never came in. Parties litigated the case all the way through, came up to us, and what we did was And then the Florida Supreme Court basically forced the State of Florida to come in and say, well, what do we think about these conflicting State agencies? So it's not unheard of for a case like this to go through without the State being joined. Well, Your Honor, I think that's certainly possible. But in this case, in order — I mean, what we're talking about, and the appellant suggests that there is a blanket protection of the written word of law, okay, and that it can never in any instance be charged for or copyrighted. Yet we know that Westlaw and Lexis and others, including Fastcase, have in their repertoire, in their libraries, copyrighted material because of what's added. In fact, when you look at what happened in this instance, on the record, you see that Fastcase has argued that the threat of litigation exists because of an argument made in one of our briefs. And what they failed to quote was the entire brief. Because in the brief, what it says is we would assert a contract claim under the terms of use — Well, let's just give you a chance right now. Can you assert to us that you're never going to sue these folks for downloading your material? Or can you not? It depends what they download. We don't — I take that as an answer to no. You're not going to guarantee us that you're not going to sue. So why can't they bring a declaratory action and say, look, they're not entitled to sue us. They claim they are entitled to sue us. We want a declaration. That's why we have the Declaratory Judgment Act. Well, two reasons. First, there's no registration. So if we couldn't bring the action — Oh, but you also claim that you might have a contract claim, right? We have a contract claim that falls outside of preemption. No registration is not a fact anymore. Not a jurisdictional fact. It's not a jurisdictional fact. It's a 12b-6 question. It's a distinction without a difference. Well, but we're not on a — we're on 12b-1, not 12b-6. I understand. But I think that there's a distinction between the U.S. Supreme Court case in deciding whether or not a class — or whether or not a class settlement should be applied versus a declaratory judgment action. The Muchnick case isn't brought in a declaratory judgment standpoint. The question really in the declaratory judgment is, could my client currently, as we sit here today, file a copyright infringement claim? And I think the answer is no. You've told them you're going to. What's that? You've told them you're going to. No, what we've told them is — Lawrider, quote, Lawrider would present a claim for breach of contract that would not be preempted by the Copyright Act, comma, along with a claim for copyright infringement, comma, depending on whether plaintiff copied any materials authored by Lawrider, end of quote. That's right. And what we're saying in that is — You threatened to sue with a copyright claim. Whether or not you have a legal basis for it is another question. Well, Your Honor, what we don't know, because Fast Case has not said what they've copied. They said for years, for a period of time, we copied. We don't know what they've copied. If they're just looking at the law and all they're copying is the actual regulation — So there's a possible threat of litigation. Let me turn to the other issue, which I think is much easier. How is there not an amount in controversy sufficient for diversity jurisdiction in this case, given the allegation in paragraph 5 of the complaint? Because I think that under the red cab theory, when you get to a declaratory judgment, you have to show a preponderance of the evidence. And I understand that at this point on the motion — No, no. It's not preponderance of the evidence if you allege it. Well, I was going to say, if we — at this point, we've got to presume it as accurate. But what we — the Georgia regulations to all members of the State Bar of Georgia. And if it's not able to, quote, Fast Case's contract with the State Bar would be subject to termination, causing a loss to Fast Case of substantially more than $75,000 per year. If you take that allegation as true on a 12B1 or a 12B6 — because there was no evidence presented on that issue, right? Correct. So that means everybody took it as a given. Why isn't that enough to establish that there's a contract and that if that contract is terminated, losses are going to exceed $75,000 a year? Well, first, because I think that there's no evidence of what the contract is. That doesn't matter. Understood. And what I think the district court said was it's speculative. We don't know, as Your Honor pointed out. We don't know what the contract says. In fact, what we do know is that since April of 2016 — Well, the district court, if it had to speculate, it should have asked for a more definite statement. One of the problems of this complaint is, first of all, it says that Fast got a contract in 2010. They allege you have an agreement. We don't know when that was. We don't know when your contract was vis-à-vis theirs. So we don't know a whole lot of things. We don't have any of the terms. But we have our contracts in the record. I understand. So what the district court did, in my view, was take a nebulous set of allegations and then say there's no jurisdiction because of the mountain controversy. And the court should have simply asked for a repleter so it could understand what these contracts are in the first place. Understood. And I think that the district court, in looking at the speculative or conjecture, may have also recognized the fact that if they've not copied this since 2016 and they still apparently have the contract with the State of Georgia or the State Bar, maybe it's not going to be terminated for the lack of updating the State regulations. Now, I recognize — Let me ask you a different question about the mountain controversy. You've had on the website $20,000. This is your chance to say that a single party can click as many times as they want, download as much as they want, sell it as many times as they want, and you're only going to claim $20,000 one time. You're not going to stack them. You want to tell me that you're only going to charge them $20,000 total? Or are you going to say that maybe you charge them $20,000 per violation? Your Honor, we don't — Clear answer. Are you going to limit yourself to one $20,000 claim? Now is your chance. All you have to do is say yes. We limit it to one $20,000 claim. Your Honor, I don't believe we need to decide that. No, no. If you did, if you did, they'd buy the whole works for $20,000, and we wouldn't be here. Well, Your Honor, actually, they could have bought the works for a lot less than $20,000. What they want is not only free — But if you're going to charge them $20,000 a click, all they've got to do is click four times, and they're above the jurisdictional minimum. Well, they — Isn't that right? In fact, they suggest that once they click once and put it on their website, they count the clicks of everybody else. But — The amount in controversy doesn't assume one side is right. It says what are you going to be arguing about in this case? And if you're going to be claiming $20,000 a click, then if — and they intend certainly to click more than four times. They're going to do it every day or every week, however often they're going to update. Then the amount in controversy is more than $75,000. I don't understand the argument to the contrary. Because in the declaratory — under the Declaratory Judgment Act, what we're looking at is not what happens if they lose their declaratory judgment. We're having what happens if they win. If they win their declaratory judgment, they can click all day long. If they win their declaratory judgment, they don't have to pay $20,000 per click, an amount well in excess of $75,000. Liability avoided is part of the amount in controversy. Your theory is it has to be a benefit. That's just not true. If you were right, we would never have all these insurance coverage cases like the one we just had. Because if the insurance company wins, there was never jurisdiction in the first place to be able to rule on whether the insurance company won. That doesn't make any sense. And the insurance company is only avoiding liability. They're never asking for money. They just want to not have to pay. And I think at this point, though, as Judge Oflat pointed out, what we've got are the facts and the record before us. So whether or not my client, depending upon circumstances, depending upon what's copied, chooses to click — to charge once or never or multiple times isn't really before the Court right now. We're at a motion to dismiss, and the lower court found that the damages alleged were speculative. Now, whether or not — we only have what's in front of us. We only have the record that is in front of us at this point. Again, I'll go back because I only have a short period of time. We believe that the lower court got it right even following the Muchnick case because it was a declaratory judgment action. But most importantly, we believe that this case should have been dismissed for the lack of joining the state of Georgia and the secretary of state. Let me ask you a question about that, and I start — this is a question that — be careful what you ask for. If the state is an indispensable party and can't be joined so that you can't — they can't go forward with their case, then when you sue them, why isn't the same true? You can never sue them because the state can't be joined. We can sue them. We can sue them in the state courts, and we can see whether or not the court — Because they made a contract. Excuse me? Because they were a party to the contract. That's exactly right. They're not a party of contract with you. The state is a party of contract with me. The issue here is not whether the state bar of Georgia is implicated. It's whether or not the secretary of state, who under the Administrative Procedures Act, has a duty to publish the regulations. It's the state — But if you — but if you sue them and they say this is invalid, and by the way, the lawsuit against us can't go forward because the state's not a party and they're indispensable, what do you say then? Well, that — Oh, I just meant that in Federal court. I don't mean it now. Then that begs — no, that begs the question, then, whether or not my threat is illusory or whether my — my threat is actual. I mean, what you're saying is — No, no. That's not what he's — that's not what he's getting at. He's trying to find out if you're — Georgia enjoys sovereign slash 11th Amendment immunity, generally speaking, in both Federal court and state court, right? Right. So if you try to join the state of Georgia, whether it's the secretary of state and or the Georgia Bar Association, in this case, and you can't because they both claim immunity and a district judge agrees, so this case goes out the window and there's no Federal case to go forward. They decide they're going to go ahead and do what they're going to do, and you decide you're going to sue them in state court for breach of contract. They turn around and do what you're doing in this case and say you can't go forward unless you join the secretary of state and the Georgia Bar. The Georgia Bar and the secretary of state again say sovereign immunity, you can't join us, can't sue us. That case goes away. So what Jachinkel is asking you is, if what's good for the goose is good for the gander, where are you going to be in your breach of contract claim down the road? I think we're in state court and we're trying to implead the state of Georgia. I think we have your case. Thank you, Your Honor. Mr. Trapper. Thank you, Your Honor. My impression after hearing counsel's discussion with the bench is that the court is pretty well advised as to what the case is about and what the issues are, and I would, so I'm not sure that I need to say anything more other than subject myself to further questioning, except that I think it is fair to say that the contract between Fastcase and the State Bar, which is only the essential elements for establishing jurisdiction or actually alleged, would certainly have come out in the course of litigation. The judge, in deciding the case ultimately, would not have any doubt remaining. One of the fundamental problems, I think, throughout the order that we're appealing from is precisely that the judge was speculating on matters that the district court should not be speculating from but should simply have relied on what was in the pleadings. I believe, to make an honest man of myself, I must say I have nothing further to add and  I think we understand your position. Thank you, Your Honor. Thank you, gentlemen. We'll move to...